UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 11-40439-659 |
| | ) | In Proceedings under Chapter 11 |
| **R & G ENTERPRISES, LLC**, | ) | |
| | ) | Hon. Kathy A. Surratt-States |
| | ) | United States Bankruptcy Judge |
| | ) | |
| | ) | MOTION FOR |
| | ) | ORDER AUTHORIZING |
| Debtor in Possession. | ) | PAYMENT OF PRE-PETITION |
| | ) | WAGES AND SALARIES |
| | ) | |
| | ) | Edward J. Karfeld |
| | ) | Karfeld Law Firm, P.C. |
| | ) | 611 Olive Street, Suite 1640 |
| | ) | St. Louis, Missouri 63101-1711 |
| | ) | Telephone: (314) 231-1312 |
| | ) | |
| | ) | Motion No. _____ |
| | ) | |
| | ) | Hearing Date: January 24, 2011 |
| | ) | Hearing Time: 11:00 a.m. |
| | ) | Location: Courtroom 7 North |

Debtor R & G Enterprises, LLC ("Debtor"), files its Motion for Order Authorizing Payment of Pre-Petition Wages and Salaries (the Motion"). In support of this Motion, Debtor relies on the Statement Under Penalty of Perjury of Richard Abeyta in Support of First Day Motions ("the Abeyta Affidavit"), which is filed contemporaneously with this Motion. In further support of this Motion, Debtor respectfully represents as follows:

1. The Court has jurisdiction in regard to this matter pursuant to 28 U.S.C. §§157 and 1334.

## **BACKGROUND**

2. On January 18, 2011 (the "Petition Date"), Debtor filed a voluntary petition

for relief under Chapter 11, Title 11 of the United States Code (the Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Missouri.

3. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, Debtor is continuing to operate its business as a Debtor in Possession. No trustee or examiner has been appointed, and no official committee of creditors or equity interest holders has yet been established in this Chapter 11 case.

4. Debtor has filed this Motion and an Emergency Motion for Expedited Hearing on Certain Motions and Applications (the "Hearing Motion"). Included within the Hearing Motion is this Motion.

## BACKGROUND OF DEBTOR

5. The background of this case may be found in the Abeyta Affidavit, which is incorporated by reference and made a part of this Motion.

## THE EMPLOYEES

6. Debtor currently employs eleven (11) people consisting of four (4) salaried and seven (7) hourly employees, which include management, office staff, and other necessary staff for a total of 8 employees. All of the employees are full-time.

7. The non-insider employees, consisting of factory staff and delivery staff are not exempt from the minimum wage requirements of the wage and hours laws.

8. The employees are all non-union. All employees will suffer great hardship if they were to lose or suffer any delay in receiving their paychecks.

9. The continued, uninterrupted service of Debtor's existing skilled and dedicated employees is vital to Debtor's reorganization efforts. The employee

compensation, reimbursement and benefits described in this Motion are reasonable compared to cash and noncash payments and benefits provided by other employers and are absolutely necessary to maintain Debtor's work force.

10. Debtor's ability to effectively reorganize its business and/or maximize the value of its assets will be adversely affected if it is unable to retain the services of its employees. Accordingly, it is essential that undue hardships that employees may suffer as a consequence of this Chapter 11 filing be minimized and that morale be maintained.

11. As described more fully herein, employees have claims against the Debtor consisting of wages and salaries (collectively referred to as the Pre-Petition Employee Claims").

12. By this Motion, Debtor seeks emergency relief. Any delay in making scheduled payments and/or providing the employee benefits described herein undermines relationships with Debtor's employees, irreparably impairs employee morale and risks interruption of services at the precise time when employee dedication, confidence and cooperation are critical.

13. The initiation of this bankruptcy proceeding creates a precarious situation for Debtor. The loss of employees could have a significant adverse impact upon Debtor's ability to reorganize and upon the value of its assets.

14. To the extent that payment of the amounts described in this Motion may subsequently be determined to be greater than a recipient thereof would otherwise have received if these cases were commenced or proceeded under Chapter 7 of the Bankruptcy Code, Debtor (or any subsequently appointed Trustee) expressly reserves the right to seek recovery of such payments.

15. Approval of the Motion and the payment of the compensation, reimbursements and benefits described herein are essential to Debtor's reorganization and are in the best interests of all parties in interest.

16. Notwithstanding anything contained herein to the contrary, this Motion shall not constitute the assumption of any executory contract of any type, kind or nature, under § 365 of the Bankruptcy Code or otherwise, and is filed without prejudice to Debtor's rights to assume, assume and assign, reject, terminate, or modify any of its executory contracts, all of which rights are expressly reserved.

17. In order to effectuate the relief sought in this Motion relating to the payment of the employee obligations discussed in this Motion, Debtor also seeks an order authorizing all applicable banks and other financial institutions to receive, process, honor, and pay any and all checks drawn on Debtor's accounts, whether presented prior to or after the Petition Date in accordance with Debtor's stated policies with regard thereto, and with any charges (including charges for returned or dishonored checks) for the same payable by Debtor, provided sufficient funds exist in the employee-related accounts to cover such payments.

18. Additionally, the rationale for entering such an order relating to the payment of employee obligations is also set forth in Debtor's Emergency Motion for Order Authorizing Maintenance of Cash Management System and Continued Use of Certain Existing Bank Accounts, Investment and Deposit Practices and Certain Business Forms filed concurrently with this Motion.

## **PRE- PETITION WAGES**

19. On January 17, 2011, Debtor distributed payroll checks to its employees in

the ordinary course of business. The total amount of these payments, including federal, state and local tax obligations related thereto, was approximately $4,340.

20. Debtor remains obligated to pay its employees for work completed before the Petition Date (the "Pre-Petition Payroll"). By this Motion, Debtor requests authority to pay such Pre-Petition Payroll in the ordinary course of its business. The estimated amount of the Pre-Petition Payroll, including federal, state and local tax obligations, for all employees is approximately $2,384.

    A. Debtor pays its hourly employees weekly, on Monday. There is a three day hold back of wages on debtor's hourly employees. The next regular payroll disbursement for Debtor's hourly employees is scheduled to be made January 24, 2011 in the approximate amount of $4,340 covering the period of January 13, 2011, to January 19, 2011; of which about $1,284 is attributable to pre-petition earnings.

    B. Debtor pays its salaried employees weekly, on Monday. There is a three day hold back of wages on Debtor's salaried employees. The next regular payroll disbursement for Debtor's hourly employees is scheduled to be made January 24, 2011 in the approximate amount of $2,200 covering the period of January 13, 2011, to January 19, 2011; of which about $1,100 is attributable to pre-petition earnings.

21. To the extent necessary, Debtor requests authority to pay the Pre-Petition Payroll in the ordinary course of its business.

### **WORKERS' COMPENSATION BENEFITS**

22. Workers' compensation claim coverage is required under law, is necessary to maintain the status quo, provides benefits to employees injured in the ordinary course

of Debtor's business, and prevents undue hardship for disabled employees who depend upon such benefits to satisfy personal needs and obligations.

23. In compliance with statutory requirements, Debtor maintains workers compensation insurance coverage. The policy was through Missouri Employers Mutual. The policy has an annual premium of about $13,303, payable in four installments. Debtor paid the first installment in the amount of $3,504 on December 12, 2010. The remaining installments, which average $3,267 each, are due on March 25, 2011, May 25, 2011, and July 25, 2011.

24. Debtor requests that it be authorized but not required to pay the Pre-Petition Employee Claims described above. Without such relief, Debtor's employees will be irreparably harmed resulting in ill-will towards Debtor and less effective employee performance. All of Debtor's employees will receive less than the $11,725 amount allowed by 11 U.S.C. § 507.

25. To the extent that payment of the amounts described in this Motion may subsequently be determined to be greater than a beneficiary would otherwise have received if these cases were commenced or proceeded under Chapter 7 of the Bankruptcy Code, Debtor (or any subsequently appointed Trustee) expressly reserves the right to seek recovery of such payments.

## APPLICABLE LAW

26. Authority to pay pre-petition employee benefits is essential to the Debtor's ability to reorganize, and is in the best interests of Debtor's estate and all creditors. Bankruptcy courts have recognized the need to satisfy pre-petition obligations relating to employees to maintain and protect a Debtor's business and preserve employee morale.

*See e.g., In re Farmland Industries, Inc.*, Case No. 02-50557 (Bankr. W.D. Mo. June 5, 2002); *In re Food Barn Stores, Inc.*, Case No. 93-40012 (Bankr. W.D. Mo. Jan. 7, 1993); *In re Federated Dept. Stores, Inc., et al.*, Order dated January 15, 1990, Chapter 11 Case Nos. 1-90-00130 to 1-90-00196 (Bankr. S.D. Ohio); *In re Apex Oil Co., et al.*, Order dated February 1, 1988, Chapter 11 Case No. 87-43804-BKC-BSS (Bankr. E.D. Mo.) (authorizing Debtor to pay pre-petition wages, vacation pay, income withholding, medical deductions, maintenance, union dues, bonuses, and overtime compensation); *In re Continental Airlines Corp., et al.*, Order dated September 29, 1983, Chapter 11 Case No. 83-04019-H2-5 (Bankr. S.D. Tex.) (authorizing the Debtor to pay active employees pre-petition claims for salary, insurance benefits, and out-of-pocket expenses and to pay $500,000 toward certain insurance claims of employees); and *In re KDT Industries*, Order dated September 16, 1982, Chapter 11 Case Nos. 82B11453 through 82B11515 and 82B11687 through 82B11718 (Bankr. S.D.N.Y.) (authorizing Debtor to reimburse employees for pre-petition travel expenses). These authorities and others recognize that it is critical to permit a debtor pay pre-petition claims of employees to preserve and protect the debtor's business and ability to reorganize by minimizing disruption to the workforce and maintaining positive employee morale.

27. This Court, pursuant to the "Necessity of Payment" doctrine, may authorize the payment of pre-petition claims if (I) necessary to the continued operation of a debtor; (ii) in the best interest of a debtor's creditors and employees; and (iii) necessary for a debtor's successful reorganization. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *In re Chateaugay Corp.*, 80 B.R. 279, 281 (S.D.N.Y. 1987).

28. Moreover, Debtor is authorized to continue to retain its assets and operate its business pursuant to Bankruptcy Code §§ 1107(a) and 1108. Section 363(c)(1) of the Bankruptcy Code authorizes Debtor to enter into transactions in the ordinary course of business without notice or a hearing. Thus, with respect to Debtor's authority to continue to provide employee benefits post-petition, no court order is required. However, to minimize disruption and preserve values, Debtor must also honor employee compensation, reimbursements, and benefits that were earned or accrued pre-petition or which are based, in whole or in part, upon pre-petition services.

## OVERALL RATIONALE

29. The relief sought in this Motion will facilitate the stabilization of a productive workforce and the success of Debtor's reorganization efforts.

30. Absent the emergency relief requested in this Motion being granted:

A. Debtor's employees will suffer undue hardships and, in many instances, financial difficulties because such amounts are necessary to enable employees to meet their respective personal, household and family obligations; and

B. The stability of Debtor's workforce will be undermined by persistent threats that otherwise loyal employees will seek other employment alternatives, coupled with increased inefficiencies and loss of morale.

## CONCLUSION

WHEREFORE, Debtor respectfully requests that this Court enter an order (a) authorizing but not requiring Debtor, at Debtor's discretion, to pay all Pre-Petition Employee Claims and other benefits as set forth herein; (b) authorizing all applicable banks and other

financial institutions to receive, process, honor, and pay any and all checks drawn on Debtor's employee-related accounts, whether presented prior to or after the Petition Date in accordance with Debtor's stated policies with regard thereto, provided sufficient funds exist in the employee-related accounts to cover such payments; and (c) granting such other and further relief as is just and proper.

| | |
|---|---|
| Dated: January 19, 2011 | Karfeld Law Firm, P.C.<br>By: /s/ Edward J. Karfeld<br>Edward J Karfeld<br>MBE #19912; USDC #10210<br>611 Olive Street, Suite 1640<br>St. Louis, MO 63101-1711<br>Phone: (314) 231-1312  Fax: (314) 231-3867<br>ejk@karfeldlaw.com<br><br>**Attorney for Debtor in Possession** |