# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| In Re:<br><br>R & G ENTERPRISES, L.L.C.,<br><br>Debtor. | Chapter 11<br><br>Case No. 11-40439-659<br><br>Hearing Date: February 7, 2011<br>Hearing Time: 10:00 a.m. |
| FOLLMAN NORTHLINE, LLC,<br><br>Movant,<br><br>vs.<br><br>R & G ENTERPRISES, L.L.C.,<br><br>Respondent. | **EMERGENCY MOTION FOR AN ORDER CONFIRMING THAT AUTOMATIC STAY DOES NOT APPLY OR FOR RELIEF FROM AUTOMATIC STAY**<br><br>John J. Hall, #41419MO<br>Lewis, Rice & Fingersh, L.C.<br>600 Washington Ave., Ste. 2500<br>St. Louis, MO 63101<br>(314) 444-7600<br>jhall@lewisrice.com |

COMES NOW Follman Northline, LLC ("Follman"), pursuant to 11 U.S.C. § 362 and Federal Rules of Bankruptcy Procedure 4001(a) and 9014, and for its Emergency Motion for Order Confirming That Automatic Stay Does Not Apply or For Relief From Automatic Stay (the "Motion"), states as follows:

### Jurisdiction and Venue

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and a contested matter under Federal Rules of Bankruptcy Procedure 4001 and 9014.

2. Venue of this proceeding in this District is proper under 28 U.S.C. §§ 1408 and 1409.

## Facts

3.  R & G Enterprises, L.L.C. ("Debtor") filed its voluntary petition for relief under chapter 11 of the United States Bankruptcy Code on January 18, 2011 (the "Petition Date"), on the eve of the trial of a rent and possession action against Debtor in the Circuit Court of St. Louis County, in the case of *Follman Northline, LLC v. R & G Enterprises, L.L.C., d/b/a San Luis Tortilla Co.*, et al, Case No. 10SL-AC36733 (the "State Eviction Case"). The State Eviction Case is the effort by Follman to gain possession of its premises located at 11722 Northline Industrial Drive, Maryland Heights, MO 63146 (the "Property"), following the termination of Debtor's lease of the Property, as described below.

4.  Follman is the owner of the Property, which is nonresidential commercial real property. Follman and Debtor were parties to that certain Lease dated August 3, 2007 (the "Lease", a copy of which is attached hereto and incorporated herein by reference as Exhibit A), pursuant to which Follman had leased the Property to Debtor.

5.  Debtor operated a tortilla manufacturing business at the Property.

6.  As of July 1, 2010, Debtor had failed to pay scheduled rent under the Lease for several months and also had failed to pay other amounts due under the Lease, including late fees, and landlord repair or improvement reimbursements.

7.  Due to Debtor's payment defaults under the Lease, and pursuant to the Lease's default terms, Follman delivered written notice to Debtor on July 13, 2010 (the "July Notice", a copy of which is attached hereto and incorporated herein by reference as Exhibit B), which terminated and forfeited the lease, stating in relevant part: "Lessee is in default and you are hereby notified that the Lease has been declared forfeited and Lessor hereby elects to terminate the Lease and the Lessee's right to possession of the Premises."

8.  Follman delivered the July Notice in accordance with Paragraph 28 of the Lease, which specifically provides for transmission by facsimile, with proof of transmission. Proof of the transmission to Debtor was received in the form of a printed confirmation receipt from Debtor's facsimile processor, a copy of which is attached hereto as Exhibit C. In addition, just two weeks ago, Debtor's representative, Richard Abeyta, specifically confirmed actual receipt of the termination notice in his deposition in the State Eviction Case. See Deposition of Richard Abeyta, January 13, 2011, p. 12, lines 13-17 (copy of deposition transcript, attached hereto as Exhibit D).

9.  In compliance with the terms of the Lease, and in particular with Paragraph 18 of the Lease, the July Notice invoked Follman's right to terminate the Lease and Debtor's right to possession of the Property. In further compliance with the terms of the Lease, the July Notice demanded possession of the Property to be delivered to Follman within the ten days specified by the Lease.

10. Notwithstanding the termination of the Lease, Debtor failed to surrender possession of the Property to Follman or to otherwise comply with the terms of the July Notice.

11. Consequently, Follman delivered a *second* notice of termination and forfeiture of the Lease to Debtor on October 1, 2010 (the "October Notice", a copy of which is attached hereto and incorporated herein by reference as Exhibit E). The October Notice again advised Debtor that the Lease was terminated and forfeited, and it again demanded possession of the Property within the ten days specified by the Lease (Paragraph 18).

12. Follman delivered the October Notice to Debtor via facsimile, and a confirmation receipt is attached hereto and incorporated herein by reference as Exhibit F. In addition, as with the July Notice, Richard Abeyta specifically confirmed Debtor's actual receipt of the October

Notice in his deposition in the State Eviction Case. See Abeyta Deposition, January 13, 2011, p. 12, lines 18-24; see also p. 22, lines 12-25, and p. 23, lines 1-5.

13. Despite receiving both the July Notice and October Notice, both of which effected the termination and forfeiture of the Lease, Debtor failed and refused to surrender possession of the Property.

14. Debtor's failure to surrender the possession of the Property, Debtor's continuing damage to the Property (described below), and Debtor's rent delinquency of approximately $68,519.01, forced Follman to pursue the State Eviction Action. As previously noted, Debtor filed this bankruptcy action the day before trial was scheduled in the State Eviction Action.

15. In addition to Debtor's failure to pay rent and other amounts under the Lease when due, Debtor has caused in excess of $100,000 in damage to the roof and interior walls of the Property. Notwithstanding the termination of its Lease, Debtor continues to trespass upon the Property and inflict damage to the Property in ongoing, and uncertain, amounts.

## Request for Relief

16. Long prior to the Petition Date, Follman invoked its legal right under the Lease to terminate the Lease and Debtor's right to possession of the Property. Follman served not one, but two, notices upon Debtor, notifying Debtor of Debtor's default in payment of amounts due under the Lease, and, pursuant to the terms of the Lease, terminating and forfeiting the Lease.

17. The termination of the Lease prior to bankruptcy is governed by Missouri state law. In re Huffman, 171 B.R. 649, 653 (Bankr. W.D.Mo. 1994). Under long-standing Missouri law, if a landlord complies with the method provided in a lease for declaring a forfeiture because

of a breach of a condition of the lease, the forfeiture is effective. Denney v. Traders National Bank of Kansas City, 408 S.W.2d 71, 74 (Mo. 1966) (adopting the proposition that "the nonpayment of rents or royalties in accordance with the terms of the lease is ground for a forfeiture of the lease and reentry by the lessor."); Passive Investors, Inc. v. International Merchandising and Printing Co., 646 S.W.2d 870, 871 (Mo.Ct.App. 1982) ("It was not necessary to pursue a forfeiture under common law because the lease provided a method for declaring a forfeiture of a condition in the lease."); Spencer's River Roads v. Unico Management, 615 S.W.2d 121, 125 (Mo.Ct.App. 1981) ("It is not necessary to pursue a forfeiture under the rules of the common law where a lease provides the method for declaring a forfeiture because of a breach of a condition of the lease."). Therefore, under Missouri law, the only requirement for forfeiture and termination of an express lease is compliance with the written terms of the lease. No other special requirements that may otherwise be imposed by common law (e.g., notice on the date rent is due) are required.

18. As previously noted, the Lease between Follman and Debtor contained a specific section (Paragraph 18) that governed default, termination and forfeiture. Paragraph 18 provided Follman with the option to cause a forfeiture of the Lease in the event of a failure "on the part of [Debtor] to pay any installment of rent . . . as and when the same becomes due and payable . . ." Under Paragraph 3 of the Lease, rent was payable monthly, on the first day of each month. If Debtor failed to make a rental payment when due, Debtor agreed that "[p]ossession of the within Premises and all additions and permanent improvements thereof shall be delivered to Lessor upon ten days' written notice that Lessor has exercised such option, and thereupon Lessor shall be entitled to and may take immediate possession of the Premises, any other notice or demand being hereby waived." In addition, in Paragraph 18 Debtor specifically waived "demand for

rent, demand for possession, notice of forfeiture, notice of termination and any and all demands or notices required by law."

19. In direct compliance with these provisions, Follman delivered the July Notice and October Notice, each declaring the termination and forfeiture of the Lease. Both Notices were delivered via facsimile, as specifically provided in the Lease, and Follman received confirmation receipts for each. Under Missouri law, no further action was required to terminate the Lease.

20. Because the Lease was terminated over three months prior to the Petition Date, Debtor may not assume the Lease. Huffman, 171 B.R. at 654. Furthermore, the automatic stay has no effect on the terminated Lease. The Bankruptcy Code specifically states that the commencement of a bankruptcy case does not act as a stay "of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of a stated term of the lease before the commencement of or during a case under this title to obtain possession of such property." 11 U.S.C. § 362(b)(10). The Eighth Circuit is clear that this section means that "[p]roperty of the estate does not include a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case." Erickson v. Polk, 921 F.2d 200, 201 (8th Cir. 1990). The Bankruptcy Code reiterates this position in section 541(b)(2), stating that property of the estate does not include "any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title." Consequently, the Huffman court recognized that a bankruptcy court "does not have power to reinstate or resurrect the terminated lease, even if the lease is vital to an effective reorganization. Huffman,

171 B.R. at 654-55. Therefore, the State Eviction Action is not subject to any automatic stay and it is not part of Debtor's instant bankruptcy estate.

21. It must also be noted that the fact that the Lease terminated due to Debtor's default, rather than through a temporal expiration of its original term, is irrelevant for purposes of sections 362(b)(10) and 541((b)(2). As used in these sections, "termination" includes an "accelerated termination by default which terminates a lease as a matter of state law." In re Southcoast Exp., Inc., 337 B.R. 739, 742 (Bankr. D.Mass. 2006); see also In re Policy Realty Corp., 242 B.R. 121, 127-128 (S.D.N.Y. 1999) (same). As noted above, Missouri law allows for termination of a written lease in accord with the provisions of the lease. Therefore, where a lease governed by Missouri law is terminated by its terms, the termination is equivalent to the expiration of the "stated term" of the lease for purposes of sections 362(b)(10) and 541(d)(2), and the lease is not subject to the automatic stay.

22. In the alternative, if the Lease was not terminated prior to the Petition Date, Follman is entitled to relief from the stay to pursue the State Eviction Action. Debtor has inflicted in excess of $100,000 in damage to the roof and interior walls of the Property, and, upon information and belief, Debtor continues to inflict damage upon the Property.

23. Follman suggests that the Debtor's disregard for the condition of Follman's Property is sufficient cause to grant relief to Follman to continue the State Eviction Action and allow Follman to protect the Property. Debtor has no ability to provide Follman adequate protection of Follman's Property, and, in fact, is doing just the opposite by impairing the Property's value, as well as deterring prospective purchasers of the Property, including a current prospective purchaser. In any event, the Property is not necessary for Debtor's reorganization because Debtor has no ability to reorganize.

WHEREFORE, Follman respectfully requests that this Court enter its Order confirming that the automatic stay does not apply to the Lease, or, in the alternative, lifting the automatic stay to allow the State Eviction Action to proceed, and granting such other and further relief to which it may be entitled.

Respectfully submitted,

LEWIS, RICE & FINGERSH, L.C.

By /s/ John J. Hall
John J. Hall, #41419MO

600 Washington Ave., Suite 2500
St. Louis, Missouri 63101
Phone: (314) 444-7635
Fax: (314) 612-7635
E-Mail: jhall@lewisrice.com

Attorneys for Follman Northline, LLC

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 28, 2011, a true and accurate copy of the foregoing was served upon those parties receiving ECF and the following parties via first-class mail, postage prepaid:

Edward J. Karfeld
611 Olive Street
Suite 1640
St. Louis, MO 63101-1711
(via Federal Express)

Office of U.S. Trustee
111 South 10th Street
Suite 6353
St. Louis, MO 63102

                                      /s/ John J. Hall

## 20 LARGEST CREDITORS

| | |
|---|---|
| MINSA CORPORATION<br>1 1/14 MILE E. HIGHWAY 84<br>MULESHOE, TX 79347 | CORN FLOUR PRODUCERS, LLC<br>RR2, BOX 376, HIGHWAY 67<br>WORTHINGTON, IN 47471 |
| SERAPIO'S TORTILLA FACTORY<br>5024 S.W. 36TH STREET<br>OKLAHOMA CITY, OK 73179 | FERNANDEZ TORTILLERIA FACTORY<br>535 ORANGE GROVE AVENUE<br>SAN FERNANDO, CA 91340 |
| FOLLMAN NORTHLINE, LLC<br>9990 OLD OLIVE STREET ROAD<br>SUITE 103<br>ST. LOUIS, MO 63141 | RIVERDALE PACKAGING CORP.<br>7301 HAZELWOOD AVENUE<br>HAZELWOOD, MO 63042 |
| LOS ALTOS TORTILLERIA FACTORY<br>1930 E MOUNTAIN ROAD<br>SPRINGDALE, AR 72764 | AZTECA MILLING, LP<br>1159 COTTONWOOD LANE<br>SUITE 100<br>IRVING, TX 75038 |
| T.D.C. PROPERTY, INC.<br>2022 CONGRESSIONAL DRIVE<br>ST. LOUIS, MO 63146 | MISSOURI DEPARTMENT OF REVENUE<br>TAXATION DIVISION<br>P. O. BOX 3375<br>JEFFERSON CITY, MO 65105 |
| UNITED FRUIT AND PRODUCE<br>55 PRODUCE ROW<br>ST. LOUIS, MO 63102 | LACLEDE GAS COMPANY<br>ROOM 1215 – BANKRUPTCY<br>720 OLIVE STREET<br>ST. LOUIS, MO 63166 |
| FRONT ROW PRODUCE, LLC<br>2427 NORTH 9TH STREET<br>ST. LOUIS, MO 63102 | PNC BANK<br>P.O. BOX 856177<br>LOUISVILLE, KY 40285 |
| CHEM MEX INDUSTRIES<br>4587 FIRESTONE BOULEVARD<br>SOUTH GATE, CA 90280 | CASA HERRERA<br>2655 NORTH PINE STREET<br>POMONA, CA 91767 |
| KOHL WHOLESALE<br>BOX 729<br>QUINCY, IL 62306 | SUBURBAN INDUSTRIAL PACKAGING<br>1519 TOWER GROVE<br>ST. LOUIS, MO 63110 |
| HERZOG CREBS, LLP<br>100 NORTH BROADWAY<br>14TH FLOOR<br>ST. LOUIS, MO 63102 | DURANGO GROCERY STORE<br>10232 PAGE AVENUE<br>OVERLAND, MO 63043 |